UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GONZALO ALEJO AMEZCUA,

Petitioner,

v.

BRUCE SCOTT,

Respondent.

CASE NO. 2:26-cv-02780-TL

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

This matter is before the Court on Petitioner Gonzalo Alejo Amezcua's Petition for Writ of Habeas Corpus ("habeas petition"). Dkt. No. 4. Respondent is Bruce Scott, the Warden of the Northwest ICE Processing Center ("NWIPC").[1] Having considered the petition, the

[1] Respondent Bruce Scott has not appeared in this matter, so the United States of America has filed a return memorandum as an "Interested Non-Party," which it says "refers to the United States of America on behalf of U.S. Immigration and Customs Enforcement Acting Seattle Field Office Director Julio Hernandez; U.S. Department of Homeland Security ('DHS') Secretary Markwayne Mullin; DHS; and Acting U.S. Attorney General Todd Blanche." Dkt. No. 8 at 1 n.1. "The Warden of Northwest ICE Processing Center, presently Bruce Scott, is not represented by the U.S. Attorney's Office." *Id.* When used in this Order, "Government" will refer to the United States of America as the Interested Non-Party.

Government's return (Dkt. No. 8), and the relevant record, and Petitioner not having filed a traverse, the Court DENIES the petition.

## I. BACKGROUND

On March 11, 2026, Petitioner filed a pro se habeas petition before another court in this District. *Amezcua v. Scott*, No. C26-820, 2026 WL 1905837, at *1 (W.D. Wash. July 2, 2026). Shortly after, Petitioner's case was referred to the Northwest Immigrant Rights Project, and Petitioner filed an amended petition through counsel. *Id.* at 1. In that petition, he argued "that his lengthy detention without an individualized custody decision violate[d] his due process rights" and sought release, or, in the alternative, a bond hearing. *Id.* at 1–2. The court in that matter: found that Petitioner's continued detention without a bond hearing violated his due process rights (*id.* at 4) and ordered that (1) the immigration court must hold a bond hearing within 14 days of the court's order, (2) the hearing must be recorded, and (3) the government bore the burden of proving by clear and convincing evidence that Petitioner is a danger to the community or a flight risk (*id.* at 8). The Court incorporates by reference the factual background from the prior habeas order. *See id.* at 1.

On July 15, 2026, the Tacoma Immigration Court held a bond hearing for Petitioner. Dkt. No. 9-2 (Bond Denial Order) at 2. At the hearing, Immigration Judge ("IJ") Tammy Fitting found that Petitioner was both a danger to the community and a flight risk and denied Petitioner's request for release. *See id.* at 2–3. Petitioner, proceeding pro se, now brings the instant habeas petition seeking release. The matter is fully briefed and ripe for the Court's review.

## II. LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance

of the evidence that they are entitled to relief, *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)—that is, that they are "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c).

## III. Discussion

### A. Jurisdiction

In general, the Court does not have jurisdiction to review discretionary bond decisions in immigration court. Specifically, 8 U.S.C. § 1226(e) states, "The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." However, Section 1226(e) does not "preclude 'habeas jurisdiction over constitutional claims or questions of law.'" *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017) (quoting *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011)). As such, "a district court has jurisdiction to review an [immigration judge's] discretionary bond denial where that bond denial is challenged as legally erroneous or unconstitutional." *Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1078 (W.D. Wash. 2026) (alteration in original) (quoting *Kharis v. Sessions*, No. C18-4800, 2018 WL 5809432, at *4 (N.D. Cal. Nov. 6, 2018) (collecting cases)); *see also Loya Medina v. Hernandez*, No. C26-772, 2026 WL 1260848, at *5 (W.D. Wash. May 7, 2026) ("Claims of constitutional injury, such as procedural due process violations[,] are . . . reviewable by a district court.").

A habeas court's review of an IJ's bond determination is for abuse of discretion. *Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024). "Under an abuse of discretion standard, '[a reviewing court] cannot reweigh evidence but can only determine whether the BIA applied the correct legal standard.'" *Id.* at 785 (citation modified) (quoting *Konou v. Holder*, 750 F.3d 1120, 1127 (9th Cir. 2014)).

Petitioner argues that the IJ abused her discretion when she denied Petitioner bond and that the IJ "never took into consideration all the evidence filed in the record." Dkt. No. 4 ¶ 5. Additionally, Petitioner asks the Court to "determine whether the Immigration Judge applied the correct legal standards[.]" *Id.* ¶ 7. Therefore, Petitioner's claims fall squarely within the Court's jurisdiction because he challenges the constitutionality of his immigration bond proceeding and the resulting detention. *See Loya Medina*, 2026 WL 1260848, at *5.

**B. Administrative Exhaustion**

The Ninth Circuit has required, "as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). "The exhaustion requirement is prudential, rather than jurisdictional . . . ." *Hernandez*, 872 F.3d at 988. Courts in the Ninth Circuit consider the *Puga* factors when determining if prudential exhaustion is required, which include whether:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)).

The Government provides that Petitioner's bond denial appeal was due August 14, 2026, and Petitioner provides no record that an appeal was filed. Dkt. No. 9-2 (Bond Order of Immigration Judge) at 3, Dkt. No. 8 at 6. As such, the Government argues that Petitioner should be required to exhaust his administrative remedies before the Board of Immigration Appeals ("BIA"). Petitioner does not make any arguments as to administrative exhaustion and did not file

a traverse replying to the Government's arguments. The Government does not explicitly mention *Puga* but does examine the factors in its brief. *See* Dkt. No. 8 at 7.

As to the first *Puga* factor, the Government argues that Petitioner appealing to the BIA will "allow[] the body with specialized expertise to develop a complete factual record" because, without an appeal, the IJ will not issue a written bond memorandum outlining her findings. Dkt. No. 8 at 6, 7. There are two issues with the Government's argument. First, challenging a bond hearing as constitutionally deficient is a claim well suited for federal district court review. *See Hernandez*, 872 F.3d at 987. Construing Petitioner's petition liberally because he is pro se, the Court interprets Petitioner's challenge as a due process claim. *See Zetino v. Scott,* No. C26-1760, 2026 WL 1862079, at *1 (W.D. Wash. June 29, 2026) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)) (noting that the court should construe a pro se immigration detainee's habeas petition liberally). The Court reaches this conclusion because Petitioner essentially argues that the process he was given at this bond hearing was insufficient because the IJ "never took into consideration all the evidence filed in the record." Dkt. No. 4 ¶ 5. The BIA's expertise, which is not in constitutional matters, is therefore unnecessary to reach a proper decision. Second, the factual record is sufficiently developed in the instant matter because the Government has provided the audio recording of the bond hearing (*see* Dkt. No. 10 (Notice of Filing Paper or Physical Materials), while Petitioner provides copies of the evidence he presented to the IJ (Dkt. No. 5 (Bond Hearing Exhibits)). The hearing audio makes very clear why the IJ made a finding that Petitioner was a danger; therefore, the Court does not need a written memorandum to understand what the IJ considered and why.[2] Therefore, the Court finds that the first *Puga* factor weighs against requiring prudential exhaustion. *See Montiel Moreno v. Hernandez*, No. C26-

[2] The Court's analysis of the IJ's ruling is discussed below. *See infra* Section III.C.

1714, 2026 WL 1906522, at *4 (W.D. Wash. June 18, 2026) (first *Puga* factor weighs against prudential exhaustion where petitioner brought constitutional claim that district court could resolve, facts of bond hearing were well-developed because IJ had issued written memorandum, and government conceded BIA would not reach constitutional claim).

As to the second *Puga* factor, the Government argues that requiring Petitioner to appeal to the BIA will "prevent[] litigants from bypassing the administrative process to obtain what amounts to appellate review in federal court." Dkt. No. 8 at 7. Relaxation of the requirement of administrative exhaustion might be justified where the case at hand may answer a recurring legal question and therefore reduce the number of future habeas petitioners. *See Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1252 (W.D. Wash. Apr. 24, 2025). However, this case will only resolve a legal question for Petitioner individually, meaning it "would not provide concrete guidance for a large swath of future administrative proceedings." *Martinez v. Scott*, No. C25-1538, 2025 WL 2689844, at *5 (W.D. Wash. Aug. 27, 2025), *report and recommendation adopted*, 2025 WL 2689066 (Sept. 19, 2025). Therefore, the Court finds that this factor weighs in favor of requiring administrative exhaustion.

Turning to the final *Puga* factor, the Government argues that requiring an administrative appeal would "allow[] the agency to correct its own errors." Dkt. No. 8 at 7. However, "[w]here the issue is whether procedural due process was violated, the Court finds no reason to delay review in favor of allowing the BIA to possibly correct an error." *Montiel Moreno*, 2026 WL 1906522, at *5 (citing *Soriano*, 830 F. Supp. 3d 1 at 1079). This is especially true given the long processing times for administrative appeals. *See Vasquez Lopez v. Hernandez*, No. C26-775, 2026 WL 984151, at *2 (W.D. Wash. Apr. 13, 2026) (citing 2026 Department of Justice statistics showing BIA appeal process is currently "substantially longer" than it was in 2024

when exhausting an administrative appeal required more than six months). Therefore, the final *Puga* factor weighs against administrative exhaustion.

* * *

In conclusion, two of the *Puga* factors weigh against requiring prudential exhaustion and one weighs in favor. On balance, the Court finds that Petitioner need not exhaust administrative remedies before bringing the instant claim. The Court now turns to the merits of Petitioner's claim.

**C. Merits of the Claim**

When determining whether a noncitizen is a danger to the community or risk of flight, an IJ weighs nine factors, pursuant to BIA precedent. *See Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006); *see also Martinez*, 124 F.4th at 783. "These factors may include any or all of the following":

> (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen]'s length of residence in the United States; (3) the [noncitizen]'s family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen]'s employment history; (5) the [noncitizen]'s record of appearance in court; (6) the [noncitizen]'s criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen]'s history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen]'s manner of entry to the United States.

*Guerra*, 24 I. & N. Dec. at 40. "Bond determinations must bear a rational relationship between the governing legal standards and the facts and evidence in a given case." *Soto Gimenez v. Hernandez*, No. C26-966, 2026 WL 1156075, at *8 (W.D. Wash. Apr. 29, 2026).

As stated, the Court interprets Petitioner's argument that the IJ did not consider most of the evidence a due process argument. Additionally, Petitioner argues that the IJ abused her

discretion in finding Petitioner a flight risk and danger to the community, and that the IJ did not apply the correct legal standard. Dkt. No. 4 ¶ 5, 7. However, in the audio recording of the hearing, the IJ clearly articulates her reasoning for her finding that Petitioner is a danger. Specifically, the record reflects that police reports related to Plaintiff's conviction for Forcible Lewd Act Upon a Child Under Fourteen was presented to the IJ and that she considered them. Bond Hearing Audio at 9:14–9:25. In reference to this serious criminal conviction, the IJ stated, "the conviction speaks for itself" and briefly discusses the "nature of the offense," "the age of the child," and the "lengthy sentence" Petitioner received, along with what the IJ believed was Petitioner's "lack of empathy" relating to the conviction. *Id.* at 9:25–9:55. After reciting all of this evidence, the IJ stated that the evidence led her to find the Government had met its burden of showing by clear and convincing evidence that Petitioner should remain detained. *Id.* at 9:55–10:13. Therefore, it is evident that the IJ considered *Guera* factor number six, which is "the [noncitizen]'s criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses." *Guerra*, 24 I. & N. Dec. at 40. The Court finds that such a conclusion does evidence "a rational relationship between the governing legal standards and the facts and evidence in a given case." *Soto Gimenez*, 2026 WL 1156075, at *8. Further, although the record does not illuminate how the IJ came to the conclusion that Petitioner is a flight risk, she did make clear why she believed he is a danger, and finding of one or the other is sufficient to require continued detention. Any error as the flight risk finding is therefore harmless. As to the finding that Petitioner presents a danger, the Court finds that the IJ did not abuse her discretion, that she did apply the correct legal standard, and that, although the IJ did not discuss the evidence that Petitioner presented, that did not prevent her from making a valid dangerousness finding, meaning Petitioner's hearing did not violate due process.

## IV. CONCLUSION

For the reasons stated, Petitioner's Petition for Writ of Habeas Corpus (Dkt. No. 4) is DENIED.

Dated this 22nd day of October, 2026.

Tana Lin
United States District Judge